IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LARRY W. KIRK,

       Plaintiff,                  No. 2:10-cv-0373 GEB CKD P

   vs.

T. RICHARDS,

       Defendant.          FINDINGS AND RECOMMENDATIONS

_____/

I. <u>Introduction</u>

          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on the original complaint filed February 12, 2010, which alleges that defendant failed to protect plaintiff from his cellmate on March 19, 2009 in violation of the Eighth Amendment. (Dkt. No. 1 ("Cmplt.").) Plaintiff's first motion for summary judgment was denied on September 6, 2011. (Dkt. Nos. 41, 48.) Defendant's first motion for summary judgment was denied without prejudice on September 30, 2011. (Dkt. Nos. 49, 50.) Discovery was re-opened. (Dkt. No. 51.) Pending before the court are plaintiff's amended motion for summary judgment (Dkt. 76) and defendant's second motion for summary judgment (Dkt. No. 78). For the following reasons, the court will recommend that defendant's motion be granted.

1

II. <u>Summary Judgment Standards Under Rule 56</u>

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Id.</u> Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>See id.</u> at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id.</u> at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. <u>See</u> Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11. The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

\\\\\

1    The court "is not required to comb through the record to find some reason to deny

2  a motion for summary judgment."  Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026,

3  1029 (9th Cir. 2001).  Instead the "party opposing summary judgment must direct the Court's

4  attention to specific triable facts."  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th

5  Cir. 2003).  Statements in a brief, unsupported by the record, cannot be used to create an issue of

6  fact.  Barnes v. Independent Auto Dealers, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

7    On May 12, 2010 and again on July 12, 2012, the court advised plaintiff of the

8  requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.

9  See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th

10  Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d

11  409 (9th Cir. 1988).

12  III.  Discussion

13    In his complaint, plaintiff alleges that defendant failed to protect him from his

14  cellmate on March 19, 2009.  Plaintiff spoke to defendant on that day, was told to return to his

15  cell, and immediately afterward was attacked by his cellmate.  He suffered physical and

16  emotional injuries.  (Cmplt. at 3.)

17    Under the Eighth Amendment, "prison officials have a duty to protect prisoners

18  from violence at the hands of other prisoners."  Farmer v. Brennan, 511 U.S. 825, 833 (1994)

19  (internal quotation marks, ellipsis, and citation omitted).   However, "not ... every injury suffered

20  by one prisoner at the hands of another ... translates into constitutional liability for prison

21  officials responsible for the victim's safety."  Id. at 834.  A prison official may be held liable for

22  an assault suffered by one inmate at the hands of another only where the assaulted inmate can

23  show that the injury is sufficiently serious, and that the prison official was deliberately indifferent

24  to the risk of harm.  Id. at 834, 837.  Thus, the relevant inquiry is whether prison officials, "acting

25  with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious

26  damage to his future health ."  Id. at 834 (internal quotation omitted).

4

1      To be deliberately indifferent, the "official must both be aware of facts from

2  which the inference could be drawn that a substantial risk of serious harm exists, and he must

3  also draw the inference." Id. "Whether a prison official had the requisite knowledge of a

4  substantial risk is a question of fact subject to demonstration in the usual ways, including

5  inference from circumstantial evidence ... and a factfinder may conclude that a prison official

6  knew of a substantial risk from the very fact that the risk was obvious." Id. at 842. The

7  "obviousness of a risk," however, is not conclusive, and "a prison official may demonstrate that

8  the obvious escaped him[.]" Id. at 843, n. 8.

9      Having reviewed the record, the court determines that the following facts are

10  undisputed[1], except where indicated otherwise:

11      Defendant is a correctional officer employed by CDCR at Deuel Vocational

12  Institution (DVI). In March 2009, defendant was assigned to work in DVI's Reception Center 2,

13  which houses inmates who are newly arrived at the prison and have not yet completed the

14  classification process. Because inmates housed in the reception center housing units have not yet

15  been assigned permanent housing, they can be moved to a new cell in a simple process that

16  generally takes less than one hour.

17      Plaintiff arrived at DVI on November 25, 2008. By March 19, 2009, plaintiff had

18  been sharing a cell with inmate Leach for approximately one week. During that week, Leach

19  made sexual advances toward plaintiff and "gave [him] an ultimatum, either me give him head,

20  oral copulation, and him do the same to me, or roll it up." Plaintiff wrote a note about this issue

21  addressed to the "RC West Hall lieutenant and lieutenant's office" and dropped it in the mail, but

22  never received a response.

23  \\\\\

24

---

25      [1] See Defendants' Statement of Undisputed Facts (Dkt. No 78-2); Plaintiff's Statement of Undisputed Facts (Dkt. No. 85 at 2.) Plaintiff's amended motion for summary judgment does not

26  include a Statement of Undisputed Facts as required by Local Rule 260(a).

On March 19, 2009, defendant worked an overtime shift in DVI's Reception Center 1, which was not his usual assignment.  Plaintiff was housed in Reception Center 1. While defendant has no memory of plaintiff approaching him on that day, plaintiff has stated in sworn deposition testimony that he approached defendant and said: "I need to talk to you, please. I'm having problems with my cellie."  (Dkt. No. 78-6 at 10.  See also Dkt. No. 85 at 2 ("On that date I personally informed C/O T. Richards that I needed to talk to him because I was having problems with my celly."); Dkt. No. 79 at 9 ("I . . . told him[] I needed to talk with him because I'm in 107-L and me and my celly was having problems.").)  As recounted by plaintiff, defendant replied that "he didn't give a fuck, that I did not need to talk with him; I needed to talk to my regular officers, that that was not his normal regular post."  (Dkt. No. 78-6 at 11; see also Dkt. No. 85 at 2.)  Plaintiff did not further explain the nature of his "problems with his celly" but returned to his cell.  See Dkt. No. 78-6 at 11 ("He didn't give me a chance before he cut me off.") Within minutes, plaintiff and Leach were involved in an altercation, which plaintiff describes as Leach "attacking [him] because I'd told him no I was not going to have any kind of sexual acts with him and that I couldn't roll it up."  (Dkt. No. 85 at 2; see also Dkt. No. 78-6 at 11-12.)

A Rules Violation Report about this incident states that Leach and plaintiff were arguing when "[s]uddenly both inmates stepped towards each other and started striking each other with their fists in the upper torso approximately three (3) to four (4) times."  (Dkt. No. 78-8 at 5.)  The staff reports prepared by responding officers do not indicate that the altercation between plaintiff and Leach concerned Leach's demand for sexual favors.  Nor do these reports indicate that plaintiff had previously complained to staff that Leach was threatening him.  (See Dkt. No. 78-7 at 5-28.)  In medical evaluations after the incident, plaintiff was found to have scratches on his right elbow and the right side of his neck, swelling on the right side of his face, and pain to the back and facial area.  Leach was found to have a cut on the left side of his face with swelling to the face and right hand.  (Id. at 6.)  During his medical evaluation, plaintiff refused to make a statement concerning the circumstances that led to his injuries.  (Id. at 26.)  As

a result of the March 19, 2009 incident, both plaintiff and Leach were found guilty of the disciplinary charge of "fighting."  Plaintiff lost 90 days of good time credit, which was subsequently restored.  Plaintiff's disciplinary finding of guilty of fighting has not been reversed.

The issue before the court is whether there exists any genuine dispute of fact as to whether defendant was deliberately indifferent to plaintiff's safety after plaintiff informed him that he was having "problems with [his] cellie" on March 19, 2009.  Here, the evidence is insufficient to create a triable issue of fact as to whether defendant had the requisite knowledge that plaintiff was at substantial risk of harm from his cellmate.  Plaintiff's only statement to defendant concerning his cellmate was made in such general terms ("having problems") that defendant would have had no reason to conclude that plaintiff was in danger of being physically attacked.  Plaintiff did not inform defendant of Leach's sexual demands or request a cell move.  There is no reason to believe defendant knew of plaintiff's earlier note about this issue, which was sent to a different prison official.  As defendant was not working his usual assignment on March 19, 2009, and usually worked in another DVI reception center, there is no reason to believe he had knowledge of plaintiff and Leach's interactions over the past week or any related threat to plaintiff's safety.  While defendant's dismissive comments to plaintiff may have prevented plaintiff from elaborating further, this fact alone cannot be used to impute the requisite knowledge to defendant.  See Farmer, 511 U.S. at 835-836 (mere negligence in prison context is not actionable under § 1983).  In the absence of a genuine dispute of fact as to this element of plaintiff's claim, defendant is entitled to summary judgment.[2]

\\\\\

\\\\\

\\\\\

---

[2] In light of this determination, the court does not reach defendant's alternative arguments that plaintiff's claim is barred by Heck v. Humphrey, 512 U.S. 477, 486-487 (1994) and that defendant is entitled to qualified immunity.

Accordingly, IT IS HEREBY RECOMMENDED THAT:

1.  Plaintiff's amended motion for summary judgment (Dkt. No. 76) be denied;

2.  Defendant's motion for summary judgment (Dkt. No. 78) be granted; and

3.  This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

 Dated: November 20, 2012

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2
kirk0373.sj